IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSE IMPORTING AND DISTRIBUTING, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 06 C 3623 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SEESAW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rose Importing and Distributing, L.L.C., filed suit against defendant, Seesaw, Inc., seeking damages under theories of breach of oral contract (Count I), quantum meruit (Count II), and fraud (Count III). Defendant has moved to dismiss all counts arguing that Count I is barred by Illinois' statute of frauds, Count II fails to state a claim, and that Count III fails to plead fraud with sufficient particularity. For the reasons set forth below, defendant's motion to dismiss is denied in part and granted in part.[1]

## FACTS

The following facts and allegations are taken from plaintiff's complaint. The court assumes the truth of the allegations for purposes of this motion only.[2] *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Defendant, a Texas corporation with its principal

---

[1]In response to defendant's motion to dismiss Count III for lack of particularity in accordance with Fed. R. Civ. P. 9(b), plaintiff has sought leave to file an amended Count III. The court grants this motion.

[2]Both parties filed affidavits in support of their positions. The submission of facts outside the allegations of the complaint is improper under Fed. R. Civ. P. 12(b)(6) and the court has elected to ignore the affidavits rather than convert the motion to one for summary judgment under Fed. R. Civ. P. 56.

place of business in Texas, desired to import various wine products of a South African wine manufacturer, Porterville Cellars. In approximately 2003, defendant solicited plaintiff, a limited liability company organized under the laws of and with its principal place of business in the State of Illinois, to help the defendant gain approval from Porterville Cellars to import its wine for distribution in the United States.

Between 2003 and the fall of 2004, plaintiff and defendant participated in negotiations regarding a proposed business relationship for the import and distribution of Porterville Cellar's wine – marketed under the Urbane label. These negotiations concluded in the fall of 2004 with plaintiff and defendant entering into an oral distribution agreement. Under the oral agreement, plaintiff agreed to furnish its expertise in the importing and distribution industry and to supply its labor and materials to create a marketing plan the defendant could present to Porterville Cellars. Additionally, plaintiff was to design a label for the Urbane wines imported by defendant and to distribute the wines nationally through plaintiff's established distribution network. In exchange for plaintiff's various services, defendant agreed to grant to plaintiff exclusive United States distribution rights – with the exception of the State of Texas – for all of the Porterville Cellars wine the defendant imported, for a fixed period of five (5) years. Plaintiff further agreed to purchase a minimum of 40,000 cases per year of Urbane wine from defendant at a cost of $43.23 a case and to sell the Urbane wine at a minimum price of $52.50 a case. In turn, defendant agreed to reimburse plaintiff's marketing costs up to a minimum of $249,000.00 a year.

Pursuant to the oral agreement, in November 2004, plaintiff researched, compiled and generated a marketing plan defendant could present to Porterville Cellars' management. Defendant did in fact present this marketing plan to Porterville Cellars and ultimately secured the

United States import and distribution rights for Urbane wine. Shortly thereafter, plaintiff arranged with its distribution networks in Alabama, Michigan, North Carolina and Tennessee to introduce Urbane Wine into various stores within the network. Not long after plaintiff began distributing Urbane wine throughout its networks, however, things turned sour between plaintiff and defendant. Defendant informed plaintiff that it would no longer supply plaintiff with any Urbane wine. In response, plaintiff repeatedly demanded that defendant comply with the oral agreement and not only continue to supply Urbane wine, but also reimburse plaintiff for its marketing expenses. These demands were never answered.

As a result of defendant's refusal to acknowledge the oral agreement, plaintiff's various distribution networks returned delivered cases of Urbane wine to plaintiff and refused to continue marketing it. Further, defendant began to distribute directly to plaintiff's distribution networks, effectively bypassing plaintiff altogether.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court will dismiss a claim only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chaney v. Suburban Bus Div.*, 52 F.3d 623, 627 (7th Cir. 1995) (quoting Fed. R. Civ. P. 12(b)(6)). The court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

### Count I:  Breach of Oral Contract

With respect to defendant's motion to dismiss Count I, the issue is whether the statute of frauds renders the alleged five-year oral contract unenforceable.  Under Illinois law, the "statute of frauds precludes enforcement of a services contract that cannot be performed within a year 'unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith.'"  *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 283 (7th Cir. 1999) (quoting 740 ILCS 80/1); *see also Jolly Group, Ltd. v. Medline Indus.*, No. 03-C-9390, 2004 WL 1283945, at *2 (N.D. Ill. April 30, 2004) ("Even assuming the parties intended oral negotiations to be binding, an oral contract would be unenforceable due to its five year term.").  Because plaintiff alleges an oral agreement with a five year term, the alleged contract is unenforceable unless a recognized exception to the statute applies.  *See Perminas v. Novartis Seeds, Inc.*, No. 00-C-4581, 2000 WL 1780249, at *2 (N.D. Ill Dec. 4, 2000).

Plaintiff argues that such an exception exists because it partially, if not substantially, performed under the agreement. Defendant counters that the doctrine of partial performance is an equitable doctrine requiring the plaintiff to establish entitlement to equitable relief before invoking it.  The court agrees with defendant.  "Under the partial-performance exception to the statute of frauds, it must be impractical to compensate the performing party for only the value of the partial performance." *Fischer*, 195 F.3d at 283.  Further, "the partial performance exception is an equitable remedy and therefore is unavailable to [plaintiff], who seeks only money damages." *Id.; see also Vuagniaux v. Korte,* 273 Ill. App. 3d 305, 210 Ill. Dec. 38, 652 N.E.2d

840, 844 (1995); *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 185 Ill. Dec. 822, 615 N.E.2d 381, 385 (1993). Because plaintiff has sought not specific performance, but rather money damages, partial performance will not take the alleged oral contract out of the statute of frauds. *See Bensdorf & Johnson, Inc. v. N. Telecom, Ltd.*, 58 F. Supp. 2d 874, 879 (N.D. Ill. 1999) ("However, as [defendant] correctly maintains, acts of partial performance will only remove an agreement from the operation of the Statute of Frauds when the enforcement action seeks the equitable relief of specific performance, and not the monetary damages sought in this case); *Dickens*, 615 N.E.2d at 385 ("In the case at bar, the fact plaintiff sought money damages in both counts precluded him from raising the partial performance exception to the statute of frauds.").

In the instant case, the complaint seeks money damages only, although the complaint also alleges in paragraph 29, "[plaintiff] remains ready, willing and able to fulfill its marketing distribution agreement with [defendant]." It is unclear, therefore, whether plaintiff can or intends to seek equitable relief. As the complaint is currently pled, however, the doctrine of partial performance is unavailable to plaintiff as an exception to the statute of frauds. Defendant's motion to dismiss Count I is granted.[3]

### Count II:  Quantum Meruit

In Count II, plaintiff alleges a claim for quantum meruit, which is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation. *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d

---

[3]If plaintiff wishes to seek specific performance or other equitable relief that arguably could avoid the statute of frauds, it may seek leave of court under Fed. R. Civ. P. 15(a).

732, 737 (7th Cir. 1990). A claim for quantum meruit requires the plaintiff to allege facts capable of satisfying the elements of the cause of action, which include: "(1) the plaintiff rendered services; (2) the defendant received the benefit of those services; and (3) the defendant's retention of those services without giving compensation in exchange will be unjust." *See Perini Bldg. Co., Inc. v. Univ. of Chicago*, No. 98-C-1744, 1999 WL 58556, at *2 (N.D. Ill. Feb. 3, 1999) (citing *Midcoast Aviation, Inc.*, 907 F.2d at 737).

Defendant argues that plaintiff cannot plead quantum meruit where there is an asserted express contract at issue. Defendant is wrong. Pursuant to Fed. Civ. P. 8(e)(2), a plaintiff may plead contradictory claims in the alternative. *See Scheiber v. Dolby Labs, Inc.*, 293 F.3d 1014, 1022–23 (7th Cir. 2002) ("For example, even if a contract is unenforceable because it violates the statute of frauds, the performing party can still claim the value of his performance, net of any payment received before the contract was rescinded, on a theory of *quantum meruit*, a type of restitution.") (emphasis in original); *Quadion Corp. v. Mache*, 738 F. Supp. 270, 278 (N.D. Ill. 1990) ("'plaintiffs may raise alternative claims of breach of contract and unjust enrichment despite the inconsistency of these claims.'") (quoting *Braman v. Woodfield Gardens Assocs.*, 715 F. Supp. 226, 229 (N.D. Ill. 1989)).

In addition, defendant argues plaintiff fails to allege the necessary elements of quantum meruit. Specifically, defendant claims the complaint fails to properly allege what benefit defendant received unjustly. The court disagrees. Plaintiff's complaint alleges that it performed various services. It further alleges that these services were a benefit to the defendant, valued at $1,854,000, and that it would be inequitable for the defendant to benefit from those services without paying for them. The Federal Rules of Civil Procedure require notice pleading only.

*See P.H. Int'l Trading Co. v. Christia Confezioni S.p.A.*, No. 04-C-0903, 2005 WL 2420377, at

*8 (N.D. Ill. Sept. 29, 1991) (denying defendant's motion to dismiss where "[p]laintiff's

complaint alleges that Plaintiff performed distributing, marketing and advertising services for

[defendant's] products . . . . [defendant] accepted the benefit of those services . . . . it would be

inequitable for [defendant] to retain the value of those services without payment for that value.").

Therefore, the court denies defendant's motion to dismiss Count II.

**CONCLUSION**

For the reasons stated herein, defendant's motion to dismiss Count I is granted. The

defendant's motion to dismiss Count II is denied. Count III is dismissed by agreement, and

plaintiff is granted leave to file an amended Count III (along with any motion to amend Count I)

on or before March 2, 2007. This matter is set for a report on status March 8, 2007, at 9:00 a.m.

**ENTER:** **February 21, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**